# UNITED STATES DISTRICT COURT

_____ DISTRICT OF MASSACHUSETTS _____

UNITED STATES OF AMERICA

V.

**CRIMINAL COMPLAINT**

ESSAM ALMOHANDIS

CASE NUMBER: O4-M-04(356C

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state the following is true and correct to the best of m knowledge and belief. On or about **January 3, 2004** in the District of **Massachusetts** defendar , (Track Statutory Language of Offense)

did have on or about his person on an aircraft, to wit, Lufthansa flight 42 from Frankfurt, Germany, to Boston, three explosive or incendiary devices, in vi lation of 49 U.S.C. §46505(b)(3); and

did, in a matter within the jurisdiction of the executive branch of the Gov rnment of the United States, knowingly and willfully made materially false, fictit ous or fraudulent statements or representations, to wit, that the three explosive r incendiary devices in his possession were artist's crayons or pens, in viol tion of 18 U.S.C. §1001(a)(2),

in violation of Title  49   18   United States Code, Section(s)  46505(B)(3)   1001(a) .

I further state that I am a(n) **Special Agent, Immigration and Customs Enforcement** and that is complaint is based on the following facts:
Official Title

See attached Affidavit of Wayne A. Day.

Continued on the attached sheet and made a part hereof:   [x] Yes   [ ] No

Signature of Complainant
WAYNE A. DAY
Special Agent, ICE

worn to before me and subscribed in my presence,

January 5, 2004 at 11:17 a.m. at  Boston, Massachusetts
Date                                                           City and State

ROBERT B. COLLINGS
United States Magistrate Judge
Name and Title of Judicial Officer            Signature of Judicial Officer

## AFFIDAVIT OF SPECIAL AGENT WAYNE A. DAY
## IN SUPPORT OF APPLICATION FOR A CRIMINAL COMPLAINT

I, Wayne A. Day, being duly sworn, depose and state as follows:

1. I am a Special Agent with Immigration and Customs Enforcement ("ICE") and have been employed as a Special Agent with ICE, or a predecessor agency, the U.S. Customs Service, for over twenty years. Since in or about 2001, I have been assigned to a Counter Terrorism Squad, part of the Joint Terrorism Task Force ("JTTF"), in the FBI's Boston Office. During my employment at ICE, its predecessor the U.S. Customs Service, and in the JTTF, I have participated in numerous investigations. I have received training in the aspects of investigation of criminal offenses. I have sworn out numerous affidavits in support of search warrants, arrest warrants and other applications.

2. During the course of my employment, I have participated in numerous investigations of many types as a case agent and in subsidiary roles. As a JTTF agent, I participate in anti-terrorism and terrorism investigations.

3. I submit this affidavit in support of a criminal complaint against ESSAM ALMOHANDIS. As evidenced herein, I believe there is probable cause to believe the following:

>   a. That on or about January 3, 2004, ESSAM ALMOHANDIS had on or about his person on an aircraft, to wit, Lufthansa flight 422 from Frankfurt, Germany, to Boston, three explosive or incendiary devices, in violation of 49 U.S.C. §46505(b)(3); and

1

    b.   That on or about January 3, 2003, ESSAM ALMOHANDIS, in a matter within the jurisdiction of the executive branch of the Government of the United States, knowingly and willfully made materially false, fictitious or fraudulent statements or representations, to wit, that the three explosive or incendiary devices in his possession were artist's crayons or pens, in violation of 18 U.S.C. §1001(a)(2).

4.   This affidavit includes information known to me, as well as information related to me by other agents, either orally or in writing. This affidavit does not include all of the facts of which I or the other agents working with me in this investigation are aware, but instead includes only those which I believe are necessary to establish the requisite probable cause.

## APPLICABLE LAW

5.   Title 49, United States Code, Section 46505, provides in pertinent part:

> **(b) General criminal penalty.** – An individual shall be fined under title 18, imprisoned for not more than 10 years, or both, if the individual –
>
> . . . .
>
> (3) has on or about the individual, or has placed, attempted to place, or attempted to have placed on that aircraft, an explosive or incendiary device.

49 U.S.C. §46505.

6.   I am aware that the United States Court of Appeals for the First Circuit addressed the definition of "an explosive or incendiary device" in United States v. Mena, 933 F.2d 19, 28 (1st

Cir. 1991). The Court found guidance in the arson statutes, 18 U.S.C. §§232(5) and 844(j), noting that, "[w]hile it is arguable that the terms' meanings as used in section 1472(l) [the precursor to §46505] are broader than under the Arson Statute. . . their meanings are certainly no narrower." Id. The Mena court relied on the definition of explosive or incendiary device contained in 18 U.S.C. §232(5)(c), and noted that that section described one type of incendiary device and included similar such devices. That definition now reads as follows:

> any incendiary bomb or grenade, fire bomb, or similar device, including any device which (i) consists of or includes a breakable container including a flammable liquid or compound, and a wick composed of any material which, when ignited, is capable of igniting such flammable liquid or compound, and (ii) can be carried or thrown by one individual acting alone.

The Mena court found that item possessed by the defendant – a tin can equipped with a wick, protruding brass contacts and filled with a kerosene-like liquid – constituted an "explosive or incendiary device" under the predecessor to §46505.

7. Title 18, United States Code, Section 1001(a)(2), as follows:

> Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive ... branch of the Government of the United States ... makes any materially false, fictitious, or fraudulent statement or representation ...shall be fined under this title or imprisoned not more than 5 years, or both.

3

**FACTS**

8. On January 3, 2004, U.S. Customs and Border Protection ("CBP") Officer Peter Mailloux was on duty at Terminal E at Logan International Airport in Boston. Terminal E serves international flights arriving at Logan. Lufthansa flight 422 from Frankfurt, Germany, arrived at Terminal E at Logan at approximately 12:45 p.m.

9. I have checked passenger records for Lufthansa flight 422. ALMOHANDIS was listed as a passenger on that flight. Airline tickets observed in ALMOHANDIS' black backpack, discussed below, confirmed that he flew from Riyadh, Saudi Arabia, to Frankfurt on Lufthansa flight 629 on January 3, and from Frankfurt to Boston on Lufthansa flight 422.

10. CBP Officer Mailloux observed ALMOHANDIS in the secondary inspection area of Terminal E at approximately 2:45 p.m. ALMOHANDIS told Officer Mailloux, among other things, that he had traveled to the Boston area for business. ALMOHANDIS had a black backpack with him ("the backpack"). Officer Mailloux spoke with ALMOHANDIS. ALMOHANDIS spoke in English. Officer Mailloux observed that ALMOHANDIS had no difficulty speaking English. ALMOHANDIS did not state he had any trouble understanding or speaking English, spoke English well, and did not ask for any translation services. ALMOHANDIS told Officer Mailloux that the back pack was the only luggage he had with him.

4

ALMOHANDIS told Officer Mailloux that he was traveling alone.

11. Officer Mailloux asked ALMOHANDIS if the back pack belonged to him. ALMOHANDIS said it did. Officer Mailloux asked ALMOHANDIS whether he packed the bag himself. ALMOHANDIS said that he did. Officer Mailloux asked ALMOHANDIS whether anyone had given him anything to bring to the United States. ALMOHANDIS said that no one had given him anything. Officer Mailloux told ALMOHANDIS that he was going to search the backpack. ALMOHANDIS said that that was okay.

12. Officer Mailloux unzipped the outer pocket of the backpack. Inside the pocket, beneath other items, Mailloux found three cylindrical objects, yellow in color, approximately 1.5 inches long (hereinafter, collectively, "the devices"). Mailloux found them laying in the bottom of the pocket. The devices each appeared to be composed of paper and bore black writing (I have examined the devices; on each, the writing states "K0201"). Officer Mailloux observed that one end of each of the devices was grayish in color, the other end was pinkish in color.

13. Officer Mailloux took one of the objects in his right hand and asked ALMOHANDIS what the object was. ALMOHANDIS stated that it was an artist's pen (at that time, ALMOHANDIS did not deny that the devices were his). ALMOHANDIS then reached toward Mailloux's right hand. Mailloux took a step back and told ALMOHANDIS not to reach for anything. ALMOHANDIS stated that he

wanted to show Mailloux how it (the device) wrote and motioned with his hand in a writing pattern. Mailloux again asked ALMOHANDIS what the items were. ALMOHANDIS stated that they were artist's pens.

14. At one point, the pinkish end of the device in Mailloux's hand broke apart from the body of the device, and a black powdery substance came out of the yellow cylinder. Mailloux showed the item to ALMOHANDIS and asked whether the items was a pen, marker or crayon. ALMOHANDIS stated it was an artist's crayon.

15. Supervisory Inspector Michael Cunningham of Customs and Border Protection joined the interview. Supervisor Cunningham took one of the cylindrical objects and asked ALMOHANDIS what the items were. ALMOHANDIS stated they were artist's crayons.

16. Supervisor Cunningham told ALMOHANDIS to cooperate and tell the officers what the items were. ALMOHANDIS stated he did not know what they were. Supervisor Cunningham asked why ALMOHANDIS did not know what they were. ALMOHANDIS stated that his wife may have put some items in the backpack. Mailloux asked why ALMOHANDIS told him earlier that he had packed his own bag. ALMOHANDIS did not respond. Mailloux asked again what the items were. ALMOHANDIS stated he did not know what they were, but had seen them around his house previously. ALMOHANDIS stated he brought the bag to the desert. Mailloux asked why ALMOHANDIS

would need the devices in the desert.  ALMOHANDIS stated that he did not know they were in the bag.

17.  I have spoken with Massachusetts State Trooper Timothy R. Murray.  Trooper Murray is trained as a bomb technician with the Massachusetts State Police, has served in that capacity for approximately seven years, and is assigned to Logan International Airport as a hazardous devices technician.  Over the last seven years, Trooper Murray has participated in the testing and/or disposal of thousands of pounds of pyrotechnics and/or explosives, and has dismantled consumer and professional grade pyrotechnics in his experience.  Trooper Murray has received training by the FBI and ATF regarding hazardous devices and explosives, and has provided training in pyrotechnics and explosives.  Trooper Murray has also testified as an expert witness on explosives and pyrotechnics in state and federal court, and has designed a handout on pyrotechnics safety.  Trooper Murray examined the three devices.  Trooper Murray also examined the one device from which the tip had broken, and observed the blackish gray granular susbtance.  Trooper Murray found that the devices were consistent with pyrotechnic devices.  Trooper Murray applied a burning match to the pink tip of the disassembled object.  The item flared up, which was consistent with a pyrotechnic device.  Trooper Murray also applied a lit match to a piece of paper containing the blackish gray substance

from the interior of the device. When the flame came into contact with the powder, the powder burned energetically and emitted a shower of sparks, which was consistent with a pyrotechnic device. Based on discussions with Special Agent Edmond G. Cronin, a bomb technician with the Federal Bureau of Investigation, the pink material on the head of the device functions as a wick for purposes of 49 U.S.C. § 46505. Based on the foregoing facts, and the facts contained herein, I believe that the devices found in ALMOHANDIS' backpack are explosive or incendiary devices within the meaning of 49 U.S.C. §46505(b)(3).

18. ICE Special Agent Colleen Forgetta interviewed ALMOHANDIS with ICE Special Agent Gus DaCunha at approximately 4:00 P.m. on January 3, 2004. Agent Forgetta asked ALMOHANDIS about the devices. ALMOHANDIS stated that he did not know where the objects came from or who put them in his luggage. Agent Forgetta told ALMOHANDIS she wanted to contact ALMOHANDIS' wife to ask her about the devices. ALMOHANDIS said no, that the backpack was his and although he regularly used it for travel, he had never seen the devices before. ALMOHANDIS further stated that when the Customs inspector pulled the items from his bag, he thought they were crayons because they looked like crayons. ALMOHANDIS said he had no explanation for what the objects were, how they were used, or how they got into the backpack.

19. At approximately 7:30 P.m. on January 3, 2004, FBI

Special Agent Michael McCall and FBI JTTF members Special Agent Edmond Cronin and Massachusetts State Trooper William Barrett interviewed ALMOHANDIS at Logan International Airport. Each officer introduced himself. ALMOHANDIS was read his rights from an FBI Advice of Rights form. ALMOHANDIS also read the form himself, aloud, in English. ALMOHANDIS spoke English clearly (ALMOHANDIS later explained that he speaks English well because in the hospital in which he works, English is the primary language and that it was essential to speak English well). ALMOHANDIS waived his rights and spoke with the agents. In the interview, ALMOHANDIS said, in part, that his travel started at his residence in Riyadh, where he said his wife packed his back pack. ALMOHANDIS stated that he did not go through the back pack for the trip and relied on his wife to pack for him, which she had done two days prior to ALMOHANDIS' departure. ALMOHANDIS stated that he had no idea how the artists pen or crayons (the devices) could have gotten into the bag. ALMOHANDIS stated that he did not put them there and did not recognize them. ALMOHANDIS also stated that no one other than his wife had access to the backpack, but that he was confident his wife did not put the devices into the backpack. ALMOHANDIS also stated that neither he nor his wife had the ability or source to obtain the devices. When the agents explained that the items were incendiary devices, ALMOHANDIS could not explain why he initially tried to describe

them as an artist's crayon or pen. ALMOHANDIS also stated that it is illegal to possess incendiary devices in Saudi Arabia.

20. I have examined the two complete cylindrical objects and the remainder of the one Trooper Murray tested. Each is similar in appearance. They have K0201 printed on them. I have learned through web site searches conducted by Trooper Murray that this designation is consistent with markings on certain items sold overseas as pyrotechnic devices.

## CONCLUSION

21. Based on the facts and circumstances described in this affidavit, along with my training, experience, and consultations with others, there is probable cause to believe the following:

> a. That on or about January 3, 2004, ESSAM ALMOHANDIS had on or about his person on an aircraft, to wit, Lufthansa flight 422 from Frankfurt, German, to Boston, three explosive or incendiary devices, in violation of 49 U.S.C. §46505(b)(3); and
>
> b. That on or about January 3, 2003, ESSAM ALMOHANDIS, in a matter within the jurisdiction of the executive branch of the Government of the United States, knowingly and willfully made materially false, fictitious or fraudulent statements or representations,

to wit, that the three explosive or incendiary devices in his possession were artist's crayons or pens, in violation of 18 U.S.C. §1001(a)(2).

Signed under the pains and penalties of perjury at Boston, Massachusetts, January 5, 2004.

_____
WAYNE A. DAY
SPECIAL AGENT
Immigration and Customs Enforcement

Sworn and subscribed to before me this ____ day of January, 2004 at Boston, MA.

_____
ROBERT B. COLLINGS
UNITED STATES MAGISTRATE JUDGE

11