```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA        )
                                )
v.                              )    Criminal No. 04-10004-PBS
                                )
                                )
ESSAM MOHAMMED ALMOHANDIS       )
```

## GOVERNMENT'S TRIAL BRIEF

### I. Government's Anticipated Evidence

**A.   Factual Summary**

On January 3, 2004, U.S. Customs and Border Protection ("CBP") Officer Peter Mailloux, anticipated to be the government's first witness, was on duty at Terminal E at Logan International Airport in Boston. Terminal E serves international flights arriving at Logan. Lufthansa flight 422 from Frankfurt, Germany, arrived at Terminal E at Logan at approximately 12:45 p.m.

Passenger records for Lufthansa flight 422 listed Defendant as a passenger on that flight. Airline tickets observed in Defendant' black backpack confirmed that he flew from Riyadh, Saudi Arabia, to Frankfurt on Lufthansa flight 629 on January 3, and from Frankfurt to Boston on Lufthansa flight 422.

10.   CBP Officer Mailloux observed Defendant in the secondary inspection area of Terminal E at approximately 2:45 p.m. Defendant told Officer Mailloux, among other things, that he had traveled to the Boston area for business. Defendant had a

black backpack with him ("the backpack").  Officer Mailloux spoke with Defendant.  Defendant spoke in English.  Officer Mailloux observed that Defendant had no difficulty speaking English.  Defendant did not state he had any trouble understanding or speaking English, spoke English well, and did not ask for any translation services.  Defendant told Officer Mailloux that the back pack was the only luggage he had with him.  Defendant told Officer Mailloux that he was traveling alone.

    Officer Mailloux asked Defendant if the back pack belonged to him.  Defendant said it did.  Officer Mailloux asked Defendant whether he packed the bag himself.  Defendant said that he did.  Officer Mailloux asked Defendant whether anyone had given him anything to bring to the United States.  Defendant said that no one had given him anything.  Officer Mailloux told Defendant that he was going to search the backpack.  Defendant said that that was okay.

    Officer Mailloux unzipped the outer pocket of the backpack.  Inside the pocket, beneath other items, Mailloux found three cylindrical objects, yellow in color, approximately 1.5 inches long (hereinafter, collectively, "the devices").  Mailloux found them laying in the bottom of the pocket.  The devices each appeared to be composed of paper and bore black writing (I have examined the devices; on each, the writing states "K0201").  Officer Mailloux observed that one end of each of the devices was

grayish in color, the other end was pinkish in color.

Officer Mailloux took one of the objects in his right hand and asked Defendant what the object was. Defendant stated that it was an artist's pen (at that time, Defendant did not deny that the devices were his). Defendant then reached toward Mailloux's right hand. Mailloux took a step back and told Defendant not to reach for anything. Defendant stated that he wanted to show Mailloux how it (the device) wrote and motioned with his hand in a writing pattern. Mailloux again asked Defendant what the items were. Defendant stated that they were artist's pens.

At one point, the pinkish end of the device in Mailloux's hand broke apart from the body of the device, and a black powdery substance came out of the yellow cylinder. Mailloux showed the item to Defendant and asked whether the items was a pen, marker or crayon. Defendant stated it was an artist's crayon.

Supervisory Inspector Michael Cunningham of Customs and Border Protection joined the interview. Supervisor Cunningham took one of the cylindrical objects and asked Defendant what the items were. Defendant stated they were artist's crayons.

Supervisor Cunningham told Defendant to cooperate and tell the officers what the items were. Defendant stated he did not know what they were. Supervisor Cunningham asked why Defendant did not know what they were. Defendant stated that his wife may have put some items in the backpack. Mailloux asked why

Defendant told him earlier that he had packed his own bags. Defendant did not respond. Mailloux asked again what the items were. Defendant stated he did not know what they were, but had seen them around his house previously. Defendant stated he brought the bag to the desert. Mailloux asked why Defendant would need the devices in the desert. Defendant stated that he did not know they were in the bag.

Massachusetts State Trooper Timothy R. Murray, a trained bomb technician, has served in that capacity for approximately seven years, and is assigned to Logan International Airport as a hazardous devices technician. Over the last seven years, Trooper Murray has participated in the testing and/or disposal of thousands of pounds of pyrotechnics and/or explosives, and has dismantled consumer and professional grade pyrotechnics in his experience. Trooper Murray has received training by the FBI and ATF regarding hazardous devices and explosives, and has provided training in pyrotechnics and explosives. Trooper Murray has also testified as an expert witness on explosives and pyrotechnics in state and federal court, and has designed a handout on pyrotechnics safety. Trooper Murray will testify that he examined the three devices. Trooper Murray also examined the one device from which the tip had broken, and observed the blackish gray granular susbtance. Trooper Murray found that the devices were consistent with pyrotechnic devices. Trooper Murray applied

a burning match to the pink tip of the disassembled object. The item flared up, which was consistent with a pyrotechnic device. Trooper Murray also applied a lit match to a piece of paper containing the blackish gray substance from the interior of the device. When the flame came into contact with the powder, the powder burned energetically and emitted a shower of sparks, which was consistent with a pyrotechnic device.

Immigration and Customs Enforcement Special Agent Colleen Forgetta interviewed Defendant with ICE Special Agent Gus DaCunha at approximately 4:00 P.m. on January 3, 2004. At that point, Agent Forgetta asked Defendant about the devices. Defendant stated that he did not know where the objects came from or who put them in his luggage. Agent Forgetta told Defendant she wanted to contact Defendant' wife to ask her about the devices. Defendant said no, that the backpack was his and although he regularly used it for travel, he had never seen the devices before. Defendant further stated that when the Customs inspector pulled the items from his bag, he thought they were crayons because they looked like crayons. Defendant said he had no explanation for what the objects were, how they were used, or how they got into the backpack.

At approximately 7:30 P.m. on January 3, 2004, FBI Special Agent Michael McCall, FBI Special Agent Edmond Cronin and Massachusetts State Trooper William Barrett interviewed Defendant

at Logan International Airport.  Each officer introduced himself. Defendant was read his rights from an FBI Advice of Rights form. Defendant also read the form himself, aloud, in English. Defendant waived his rights and spoke with the agents.  In the interview, Defendant said, in part, that his travel started at his residence in Riyadh, where he said his wife packed his back pack.  Defendant stated that he did not go through the back pack for the trip and relied on his wife to pack for him, which she had done two days prior to Defendant' departure.  Defendant stated that he had no idea how the artists pen or crayons (the devices) could have gotten into the bag.  Defendant stated that he did not put them there and did not recognize them.  Defendant also stated that no one other than his wife had access to the backpack, but that he was confident his wife did not put the devices into the backpack.  Defendant also stated that neither he nor his wife had the ability or source to obtain the devices. When the agents explained that the items were incendiary devices, Defendant could not explain why he initially tried to describe them as an artist's crayon or pen.  Defendant also stated that it is illegal to possess incendiary devices in Saudi Arabia.

   The government will also call Supervisory Special Agent Thomas J. Mohnal, an explosives technician with the F.B.I. Consistent with the Government's Summary of Expert Testimony, Special Agent Mohnal will testify that he examined the devices,

and determined that they are incendiary devices.  The government will also call Mr. Daniel Hickey, an explosives chemist with the F.B.I.  Consistent with the Government's Summary of Expert Testimony, Mr. Hickey will testify that he chemically analyzed the devices, and determined that their chemical make-up is consistent with that of incendiary devices.

**II.   Anticipated Issues**

    **A.   Definition Of Incendiary Device**

The government anticipates that the Defendant will claim that the devices are not incendiary devices, and that Defendant's expert will so opine.

Title 49, United States Code, Section 46505, provides in pertinent part:

> **(b) General criminal penalty**. – An individual shall be fined under title 18, imprisoned for not more than 10 years, or both, if the individual –
>
> . . . .
>
> (3) has on or about the individual, or has placed, attempted to place, or attempted to have placed on that aircraft, an explosive or incendiary device.

49 U.S.C. §46505.

The United States Court of Appeals for the First Circuit addressed the definition of "an explosive or incendiary device"

in United States v. Mena, 933 F.2d 19, 28 (1st Cir. 1991). The Court found guidance in the arson statutes, 18 U.S.C. §§232(5) and 844(j), noting that, "[w]hile it is arguable that the terms' meanings as used in section 1472(l) [the precursor to §46505] are broader than under the Arson Statute. . . their meanings are certainly no narrower." Id. The Mena court relied on the definition of explosive or incendiary device contained in 18 U.S.C. §232(5)(c), and noted that that section described one type of incendiary device and included similar such devices. That definition reads as follows:

> any incendiary bomb or grenade, fire bomb, or similar device, including any device which (i) consists of or includes a breakable container including a flammable liquid or compound, and a wick composed of any material which, when ignited, is capable of igniting such flammable liquid or compound, and (ii) can be carried or thrown by one individual acting alone.

The Mena court found that item possessed by the defendant – a tin can equipped with a wick, protruding brass contacts and filled with a kerosene-like liquid – constituted an "explosive or incendiary device" under the predecessor to §46505.

Given the reports and conclusions of the government's experts, set forth in the Government's Summary of Expert Testimony, the government has more than met its burden of establishing that the devices are "incendiary devices."

-8-

**B.   Defense Photographs Of International Arrivals Hall**

Following the Court's issuance of an Order dated February 10, 2004, Customs and Border Protection expressed grave reservations about permitting a non-government photographer take photographs in the secure areas of the international arrivals hall.  Although that agency requested the undersigned to move for a protective order, counsel for the parties, aware of the short amount of time available before trial, reached an accommodation.  Defendant's investigator, Andrew Pevehouse, took the photographs using a digital camera.  At the end of that session, Defendant's counsel provided the "memory stick" containing those digital images and gave it to the undersigned in a sealed envelope.  The undersigned made available for counsel's inspection digital photographs taken by an F.B.I. photographer.  Counsel for the parties will seek further direction from the Court.

**C.   Motion In Limine Regarding Customs Declaration and Ticket**

Within Defendant's Trial Brief, he moves to exclude the Customs Declaration he executed and which was presented to Customs and Border Protection.   There is no grounds for its exclusion.  He presented to the CBP Officer as a constitutive part of the border examination process.  The questioning stems, at least in part, from responses made on the Customs Declaration.  The marking to which Defendant's counsel are substantially

illegible, and will not confuse the jury.  This is an attempt to unfairly limit probative evidence of what Defendant did upon his arrival.

There is no reason to exclude any part of Defendant's ticket.[1]  The ticket is in fact a contract between Lufthansa Airlines and Defendant.  Within the ticket, he was advised, in English and Arabic, that certain materials, including fireworks, are not permitted to be carried aboard the aircraft.  The ticket, including all its components, is probative, and is not unduly prejudicial.  Defendant provides no basis for his assertion that the inclusion of the warnings within the ticket, issued in the Kingdom of Saudi Arabia for a carrier based in the Federal Republic of Germany, is an "apparent reference" to regulations promulgated pursuant to 49 U.S.C. § 46312.  The ticket should be admitted.  The experts will corroborate the warning statements, based on their training and experience, fireworks are not permitted on aircraft.

### D. Sequestration Of Witnesses

The government requests that the Court simply follow Fed. R. Evid. 615 and sequester the witnesses, except those exempt from sequestration by the terms of the Rule.  Obviously, Defendant is

---

[1] The government has agreed with Defendant's counsel to submit a photographic copy of the ticket rather than risk the possibility that handling of the still-valid ticket could damage its integrity.

exempt from exclusion.  The government hereby identifies as its representative for purposes of sequestration Special Agent M. David Habich of the Federal Bureau of Investigation.  Although identified as a potential witness on the government's witness list, the undersigned does not believe Special Agent Habich will be called by the government to testify.

Defendant's expert, who will opine that he does not believe the devices are incendiary devices, a single issue, cannot fairly be characterized as an expert "needed to advise counsel in the management of the litigation."  Fed. R. Evid. 1972 Proposed Rules Advisory Committee Note.  This is simply not that complicated a case.

                                      Respectfully submitted,

                                      MICHAEL J. SULLIVAN
                                      United States Attorney

                           By:   /s/ Gregory Moffatt
                                      GREGORY MOFFATT
                                      BRIAN T. KELLY
                                      Assistant U.S. Attorneys
February 20, 2004              (617) 748-3370

## CERTIFICATE OF SERVICE

I, Gregory T. Moffatt, Assistant U.S. Attorney, do hereby certify that I have this day served the copy of the foregoing by

hand delivery, to Miriam R. Conrad, Esq., Federal Defender Office, 408 Atlantic Avenue, 3rd Fl., Boston, MA 02210, this 20th day of February 2004.

        /s/ Gregory Moffatt
        GREGORY MOFFATT
        Assistant U.S. Attorney