UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA        )
                              )
         v.                     )    CRIMINAL NO. 04-10004-PBS
                              )
ESSAM AL-MOHANDIS          )

<u>MOTION FOR JUDGMENT OF ACQUITTAL</u>

Defendant, Essam Al-Mohandis, respectfully moves pursuant to Fed. R. Crim. P. 29 that this court order the entry of judgments of acquittal on this indictment. As grounds for this motion, defendant states that the evidence, taken in the light most favorable to the government, is insufficient to permit a reasonable finder of fact to conclude, beyond a reasonable doubt:

1) that the items in question are incendiary devices within the meaning of 49 U.S.C. § 46505;

2) that defendant knowingly had them on or about his person while on the airplane; and

3) that defendant knowingly and willfully made a material false statement to a Customs agent.

I. THE DEVICE IS NOT AN INCENDIARY DEVICE

The statute at issue, 49 U.S.C. § 46505, is captioned, "Carrying a weapon or explosive on an aircraft." While earlier laws made it a misdemeanor to carry dangerous weapons or explosives on an aircraft, the current version of the statute first appeared as 49 U.S.C. App. § 1472(l)(1) in the "Anti-

Hijacking Act of 1974."  That law punished " . . . any person who has on or about his person, or who has placed, attempted to place, or attempted to have placed aboard such aircraft any bomb, or similar explosive or incendiary device . . . ."  The crime was a misdemeanor.

The legislative history reveals an intent to include not only weapons, but other "explosives or other destructive substances."  H.R. Rep. No. 93-885 (1974); S. Rep. No. 39 (1973). The statute focused on weapons and other inherently dangerous devices intended to be used for "destructive" purposes.  See Pub. L. No. 93-366, § 203, 88 Stat. 417.  The legislative history notes that the bill expanded the law "to include explosives <u>and other destructive substances</u> as well as weapons." (emphasis added).

When the current version of the statute was enacted in 1994 as 49 U.S.C. § 46505(b), the phrase "bomb or similar" was deleted, so that the statute now read, "explosive or incendiary device."  Pub. L. No. 103-272, § 1(e), 108 Stat. 1244 (1994). The corresponding legislative history reveals that the phrase "bomb or similar" was "eliminated as surplus."  H. Rep. No. 103-80 (1994).  The fact that Congress viewed the term "bomb" as redundant terminology indicates that it equated incendiary devices and explosives with bombs.  See <u>id</u>.

The dictionary definitions of the phrases used in both

§ 46505 and § 232(5)[1] also point to a narrower definition of the
term "incendiary device".  "[U]nless Congress has pointed the
other way, courts should endeavor to read familiar words in the
manner that ordinary people would most likely understand." Mena,
933 F.2d at 28.  The phrase "incendiary bomb" is defined by
Webster's Unabridged Dictionary as "a bomb that contains an
incendiary agent (as jellied gasoline) and is designed to kindle
fires at its objective."  The word "incendiary," standing alone,
is defined as "of, relating to, or involving a deliberate burning
of property." Id.  The word "device" means "a piece of equipment
or a mechanism designed to serve a special purpose or perform a
special function."  Id.

What all of these definitions have in common is a focus on
the purpose of the item in question.  Therefore, an
interpretation of the statute that defines an incendiary device
as anything that could ignite a fire would be overly broad
(including, for example, matches and lighters), inconsistent with
the statutory purpose, and would trivialize the statute.

The focus on the last clause of the statute, which defines a
"similar device" as including certain breakable containers, with

---

1 As previously noted, in United States v. Mena, 933 F.2d 19
(1st Cir. 1991), the First Circuit looked to the definition set
forth in 18 U.S.C. § 232(5), under the chapter headed "Civil
Disorders" for a definition of "incendiary device" as that term
appeared in the predecessor statute to § 46505.

flammable liquids or compounds and a wick, should not exclude
what comes before: that device still must be "similar to" an
incendiary bomb or grenade, or firebomb.

The legislative history for section 232(5) states that
"(under) this part of the title, the definition of explosives is
broadened to include incendiary devices such as 'Molotov
cocktails.'" H.R.Rep No. 91-1549, 91st Cong., 2d Sess., reprinted
in 1970 U.S. Code Cong. & Ad. News 4007, 4011. It is clear that
the description of "a breakable container including a flammable
liquid or compound, and a wick composed of any material which,
when ignited, is capable of igniting such flammable liquid or
compound," is intended to encompass Molotov cocktails.

To interpret the statute as reaching any item that can start
a fire, as the government has suggested, would overly broaden the
statute and would be inconsistent with the statutory purpose.

The First Circuit's approach to a somewhat related statutory
provision is instructive. In United States v. Norton, 808 F.2d
908, 909 (1st Cir 1987) the First Circuit reversed a conviction
under 18 U.S.C. § 844(d), which makes it a crime to transport any
explosive in interstate commerce with the intent to intimidate
another. It did so by interpreting the word "intimidate"
narrowly, leaving outside the reach of the statute the
defendant's prank involving a radar detector containing a
firecracker and indelible ink. Despite the fact that a state

-4-

trooper who found the item suffered injuries requiring stitches,

the Court reversed the conviction, interpreting the word

"intimidate" narrowly.  The Court looked to the purpose of the

statute, the dictionary definition of the word, and other

criminal statutes:

> In sum, Norton's interpretation seems better to carry
> out Congress's intent in enacting this statute by
> avoiding its trivialization and extension to
> circumstances where its application seems unfair and
> totally unnecessary to carry out its purposes.  At the
> same time, that interpretation is consistent with other
> criminal statutes using similar language, with
> dictionary definitions, with the history of the statute
> and with prior case law.

Id. at 909.

The same factors support a narrow interpretation of

"incendiary device" in this case.

Moreover, as the Norton court observed in the context of

§ 844(d), other statutes cover firecrackers of this type.  The

Court observed:

> Nothing in the statute's history suggests an intent to
> make unlawful the transportation of a firecracker
> across a state line solely for the purpose of scaring a
> relative, friend, or neighbor.  To the contrary, state
> laws and other  federal statutes, carrying lighter
> penalties, specifically deal with firecrackers. See 18
> U.S.C. § 836 (federal crime to transport fireworks into
> state for use in violation of laws of that state;
> maximum penalty one year imprisonment and/or $1,000
> fine)."

Id. at 909 (emphasis in original).

As the government has observed in the instant case, a separate statute -- under which Mr. Al-Mohandis was not charged -- prohibits transporting hazardous materials on an airplane. As in Norton, the presence of another, broader statute, carrying a less severe penalty, evinces the absence of a Congressional intention to give the law a scope so broad that it overlaps with other, less serious statutes. At the same time, the definition that we propose "preserves the statute's ability to meet all of its significant objectives." Norton, 808 F.2d at 910. It also "creates no statutory anomaly" and is "consistent with the dictionary definition." Id.

II.    THE GOVERNMENT HAS NOT SHOWN THAT MR. AL-MOHANDIS KNEW THAT
       THE ITEMS WERE IN HIS BAG.

The government's evidence is insufficient to persuade a rational trier of fact that Mr. Al-Mohandis knew that the items were in his bag while he was on the airplane. There is no evidence of when the items were placed there, nor is there any evidence as to whether he had access to them while he was on the plane or that they were "about" his person while in flight. Cf. 49 U.S.C. § 46505(b)(1) (punishing persons who have dangerous weapons on or about themselves or their property that is or would be accessible to the individual in flight).

III. THE GOVERNMENT'S EVIDENCE IS INSUFFICIENT TO PROVE THAT MR.
     AL-MOHANDIS KNOWINGLY AND WILLFULLY MADE FALSE STATEMENTS.

Defendant submits that the evidence is insufficient to

support a conviction on Count Two.

The statement in question – what the items were – is

ambiguous in the sense that it could be interpreted (especially

by a non-native English speaker) as asking for his opinion or

belief as to what the items were, or looked like.  "[I]n a false

statement prosecution, an answer to a question is not fraudulent

if there is an objectively reasonable interpretation of the

question under which the answer is not even false."  United

States v. Rowe, 144 F.3d 15, 21 (1st Cir. 1998).

The government's theory depends upon an interpretation of

the question that implies an answer to the question that was not

asked: whether Mr. Al-Mohandis knew what the items were.  But an

answer that simply implies an answer – even a misleading one –

cannot support a conviction.  "[W]here, as here, the government

hinges its charge on the false implications of a statement that

is not alleged to be false in itself, we think that Bronston [v.

United States, 409 U.S. 352 (1973)] applies and warrants the

dismissal of the indictment."  United States v. Finucan, 708 F.2d

838 (1st Cir. 1983) (reversing perjury conviction).  Moreover,

here the uncontradicted evidence shows that within minutes, Mr.

Al-Mohandis clearly stated to several different agents that he

did not know what the items were, and that they looked like crayons.

The statement in question here was made during a brief, unrecorded conversation, by a defendant for whom English was not his native language.  While the First Circuit has stopped short of holding that "a verbatim transcript or written statement is required per se in prosecutions under 18 U.S.C. § 1001," United States v. Poutre, 646 F.2d 685 (1ˢᵗ Cir. 1980), it did in that case reverse a conviction.  It held that, "where one of the three statements is found only in a solitary prosecution witness' testimony without any contemporary corroboration, such oral evidence is too fragile to support a guilty verdict."  Id.

Defendant respectfully requests that the court enter judgments of acquittal on both counts.

ESSAM AL-MOHANDIS
By his attorney,


Miriam Conrad
   B.B.O. # 550223
Federal Defender Office
408 Atlantic Ave. 3rd Floor
Boston, MA  02210
Tel: 617-223-8061

CERTIFICATE OF SERVICE

I, Miriam Conrad, hereby certify that a true copy of the above document was served upon Assistant United States Attorney Gregory Moffatt by delivery on February 24, 2004.

Miriam Conrad